**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**JOANNE DUNHAM**
242 Glenwood Road
Elkins Park, PA 19027

*Plaintiff,*

**vs.**

**DELOITTE L.L.P.**
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

*Defendant.*

NO. 2:19-cv-02554-ER

CIVIL ACTION

JURY TRIAL DEMANDED

## AMENDED COMPLAINT

Plaintiff, by and through undersigned counsel, hereby files the following Complaint against each Defendant:

### INTRODUCTION

1.      Plaintiff initiates this action to seek redress against each Defendant for unlawful violations of Title VII of the Civil Rights Act ("Title VII") and other applicable law.

### PARTIES

2.      Plaintiff, JoAnne Dunham ("Plaintiff") is an adult individual currently residing at the above-captioned address.

3.      Defendant, Deloitte LLP ("Defendant") is a Delaware limited liability partnership existing pursuant to the laws of the State of Delaware with a registered agent for service of process at the above-captioned address.

4.      At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of his or her job duties.

5.      Defendant is an "employer" within the meaning of Title VII because it is engaged in an industry affecting interstate commerce and because they maintained or maintain fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

6.      Defendant is an "employer" within the meaning of the ADEA because it is engaged in an industry affecting interstate commerce and because it maintains or maintained twenty (20) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

7.      Defendant also maintains sufficient employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act (requiring four or more employees).

## JURISDICTION and VENUE

8.      All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

9.      The Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10.     The United States District Court for the Eastern District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and

1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

11.     The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

12.     Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendants is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Eastern District of Pennsylvania at the time of the illegal actions set forth herein).

## PROCEDURAL and ADMINISTRATIVE REMEDIES

13.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

14.     Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under Title VII and the PHRA.

15.     Plaintiff filed a written charge of discrimination with the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission alleging discrimination on or about November 9, 2018 (No. 530-2019-00920).

16.     The instant action is timely because it is initiated within ninety ("90") days after the receipt of a Right to Sue letter mailed on or about March 14, 2019.

17.     Plaintiff has exhausted federal administrative remedies as to the allegations of the instant Complaint.

18.    Plaintiff will seek leave to amend this complaint at any time up to and including during trial to incorporate a claim under the PHRA after the expiration of that act's one year waiting period in a manner consistent with Fed.R.Civ.P. 15.

## FACTUAL BACKGROUND

19.    All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

20.    Plaintiff is an African American female.

21.    Plaintiff's date of birth is December 3, 1958.

22.    Plaintiff worked for Defendant from June 2004 until May 23, 2018 when she was unlawfully terminated.

23.    Plaintiff worked in Philadelphia, PA.

24.    Plaintiff's termination was based on her race, religious affiliation, and/or in retaliation for a complaint she had filed in March 2018.

25.    Plaintiff was unfairly criticized and mistreated by her supervisors even before her termination.

26.    Beginning in May/June 2017, Alesia Jones started reprimanding Plaintiff for failing to do work assigned to her.

27.    These reprimands were based on statements made by Cheryl Douglas, a co-worker applying for the same supervisory position that Plaintiff was applying for, and had absolutely no merit.

28.    Alesia Jones and Cheryl Douglas frequently made comments over the years that Plaintiff had no need for a raise as there was an assumption that she inherited money from her parents.

29.     Comments of this nature were also frequently made by Cheryl and Alesia based on the clothing/accessories worn by Plaintiff.

30.     Beginning in May/June 2017, Alesia would frequently accuse Plaintiff of being away from her desk for extended periods of time when she was, in fact, at her desk during these times or had stepped away for a few minutes to go to the restroom or get coffee.

31.     An example of this happening is Plaintiff would frequently get IMs from either Jesse Mothyershed or Cheryl Douglas stating that she was away from her computer for in excess of 30 minutes when she was sitting at her desk the entire time.

32.     In July 2017, Alesia was replaced as manager by Jesse Mothershed and Cheryl Douglas became her supervisor.[1]

33.      At this time Plaintiff was no longer permitted to work from home on certain days as she had been in the past.

34.     Also at this time, Plaintiff was denied the ability to take any breaks but her one hour lunch break which was at odds with Defendant's previous culture where it was encouraged to take a few moments away from one's desk in the morning and afternoon.

35.     Plaintiff complied with these new mandates.

36.     In August 2017 a co-worker shared, in confidence, with Plaintiff that she saw a copy of a report generated about her stating details such as arrival time, departure time and her movements around the building.

37.     In August/September 2017 Plaintiff was warned by Cheryl Douglas that she was being watched, but that she didn't know why.

---

[1] This is the supervisor position that both Plaintiff and Cheryl were applying for.  Despite having more tenure and relevant experience, Plaintiff was passed over for this promotion.

38.     Days after this happened, Cheryl spoke to another co-worker (Diana Falana) and told her that Plaintiff was being watched and that any association with Plaintiff would be perceived negatively.

39.     In a meeting with Jesse in October 2017 Plaintiff brought up her concerns regarding the IMs she was receiving from both him and Cheryl stating she was not at her desk for extended periods.  She stated that she was at her desk and implored him to review the security tapes.

40.     In February 2018 during a meeting with Jesse and Cheryl, Plaintiff was provided a letter stating that she was not meeting expectations.

41.     This letter stated that Plaintiff did not complete certain tasks; however these tasks were during two periods when Plaintiff was out on bereavement leave (November/December 2017 for her father and January/February 2018 for her mother-in-law).

42.     The letter stated that Plaintiff was late 10 or more times in July; yet these were times that Plaintiff, with Jesse's knowledge and approval, had switched her start time with a co-worker so the co-worker would be able to take a class.

43.     Plaintiff asked Cheryl how she could possibly be deemed as "not meeting" expectations she had told her she was a number one producer and doing well the week prior.

44.     In early March 2018 Plaintiff filed a complaint with Defendant's ethics hotline for the discriminatory and unfair treatment she was receiving at the hands of Cheryl, Jesse and Alesia.

45.     In March of 2018 a co-worker, Dan Mathias, informed Plaintiff that he had filed an ethics hotline complaint on her behalf due to the discrimination and hostile work environment he witnessed happening to Plaintiff.

46.    Alesia Jones, Plaintiff's former manager, is a Jehovah's Witness and the two women who were retained in Plaintiff's department were personal friends and acquaintances hired by her whom are also Jehovah's Witnesses (Caryn Whittington and Betty Hamilton).

47.    In April/May 2018 Plaintiff learned that a task force had been set up to address issues arising from the implementation of the new application, SWIFT, that Defendant had switched to.

48.    Plaintiff was excluded from this taskforce; however, Caryn Whittington and Betty Hamilton were both included even though they were the two most recently hired in her group.

49.    Around this same time, Plaintiff noticed that work was not being distributed to her by the workflow coordinator, Caryn Whittington.

50.    Plaintiff informed Caryn that she was able to handle more of a workload, but still none was sent to her.

51.    By Late April/May 2018, Cheryl avoided any contact with Plaintiff.

52.    When information needed to be conveyed to Plaintiff's group, Cheryl would only address Caryn Whittington and Betty Hamilton.

53.    On May 23, 2018, Plaintiff was unlawfully terminated from her employment with Defendant.

54.    Plaintiff was told there was no performance-based reason for her termination and that it was a "business decision".

55.    Another member of Plaintiff's group subject to the "administrative downsizing" was Ruth Yuen, who was also terminated at this time.

56.    Ruth was not a Jehovah's Witness.

57.    Defendant was aware at all time that Plaintiff was not a member of the Jehovah's Witness religion.

58.     The members of the group who were retained by Defendant were Caryn Whittington and Betty Hamilton, both Jehovah's Witnesses.

59.     The receptionist and another traditional administrative employees were also Jehovah's witnesses and neither were part of the "administrative downsizing."

60.     Upon information and belief, those retained in Plaintiff's department, Caryn and Betty, were both set up to work from home twice a week despite the fact that when Plaintiff was employed she was only allowed to work one.

## COUNT I
## Title VII Violations

61.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

62.     At all times relevant herein, Plaintiff was subjected to discriminatory actions by virtue of her race and religion.[2]

63.     At all times relevant herein, Plaintiff was subjected to an unlawful hostile-work environment.

64.     At all times relevant herein, Plaintiff was subjected to unlawful retaliation.

65.     As a direct and proximate result of these violations, Plaintiff has sustained the injuries, damages and losses set forth herein.

## COUNT II
## Race Discrimination and Retaliation 42 U.S.C. § 1981

66.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

---

[2] It should be noted that Plaintiff was not discriminated against based on what religion she was, but rather was discriminated against because of what religion she wasn't.  In this case Jehovah's Witness.

8

67.     At all times relevant herein, Plaintiff maintained or sought to maintain a contractual relationship with Defendant.

68.     At all times relevant herein, Defendant acted by and through its agents, servants, and employees to intentionally discriminate against Plaintiff on the basis of race and thereby deny the benefits of the contractual relationship entered or sought to be entered into with Defendant by discriminating on the basis of race.

69.     At all times relevant herein, Plaintiff was subjected to an unlawful hostile-work environment.

70.     At all times relevant herein, Plaintiff was subjected to unlawful retaliation.

71.     As a result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered damages as set forth herein.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against each Defendant and that it enter an Order as follows:

a.   The Defendants are to be permanently enjoined from engaging in discrimination against the Plaintiff on any other basis prohibited under applicable law;

b.   The Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or custom of permitting discrimination and retaliation in the workplace, and are to be ordered to promulgate an effective policy against such harassment and discrimination and to adhere thereto;

c.   The Defendants are to be prohibited from continuing to maintain their unlawful policy, practice, or custom of discriminating against employees and are to be

ordered to promulgate an effective policy against such discrimination and to adhere thereto;

d. The Defendants are to compensate the Plaintiff, reimburse the Plaintiff, and to make Plaintiff whole for any and all pay and benefits the Plaintiff would have received had it not been for the Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. The Plaintiff should be accorded those benefits illegally withheld from the date the Plaintiff first suffered discrimination at the hands of the Defendants or their agents until the date of verdict ;

e. The Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by the Defendants' actions to the extent they are available as a matter of law;

f. Only to the extent available as a matter of law, Plaintiff is to be awarded punitive damages.

g. The Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

h. The Plaintiff is to be awarded the costs and expenses of this action and attorneys fees as provided by applicable federal and state law;

i. Any verdict in favor of the Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law and to reflect the tax consequences thereof;

j. The Plaintiff is to be granted such additional injunctive or other relief as may be requested during the pendency of this action in an effort to ensure the Defendants

do not engage – or cease engaging – in unlawful retaliation against Plaintiff or other witnesses in this action;

k.  The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

l.  Plaintiff demands trial by jury on all issues so triable pursuant to Fed.R.Civ.P. 38.

Respectfully submitted,

KOLMAN LAW, P.C.

/s/ *Kathryn E. Liebhaber*
Kathryn E. Liebhaber, Esquire
Timothy M. Kolman, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138

*Attorneys for Plaintiff*

Dated:  November 20, 2019